UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2004

(Argued: May 27, 2005          Decided: July 29, 2005)

Errata Filed: August 8, 2005)

_____

SHI LIANG LIN,

*Petitioner*,

—v.—

UNITED STATES DEPARTMENT OF JUSTICE and ATTORNEY GENERAL GONZALES,[*]

*Respondents*.

Docket No. 02-4611

_____

ZHEN HUA DONG,

*Petitioner*,

—v.—

UNITED STATES DEPARTMENT OF JUSTICE and ATTORNEY GENERAL GONZALES,

*Respondents*.

Docket No. 02-4629

_____

[*]  In each of the three petitions we here consider, Attorney General Alberto R. Gonzales is, pursuant to Federal Rule of Appellate Procedure 43(c)(2), automatically substituted for former Attorney General John Ashcroft as Respondent.

---

XIAN ZOU,

*Petitioner*,

—v.—

ALBERTO R. GONZALES, ATTORNEY GENERAL,

*Respondent*.

Docket No. 03-40837

---

Before: CALABRESI, KATZMANN, B.D. PARKER, *Circuit Judges*.

―――――――

The petitioners appeal from summarily affirmed decisions of three immigration judges denying their respective applications for immigration relief. **REMANDED**.

―――――――

| | |
|---|---|
| Appearing for Petitioners Zhen Hua Dong and Shi Liang Lin: | BRUNO J. BEMBI, Hempstead, NY. |
| Appearing for Petitioner Xian Zou: | ALEKSANDER MILCH, (Michael Lehach, *on the brief*), Christophe & Associates, P.C., New York, NY. |
| Appearing for Respondents: | DAVID S. RUBENSTEIN, Assistant United States Attorney (Sara L. Shudofsky, Assistant United States Attorney, *of counsel) for* David N. Kelley, United States Attorney for the Southern District of New York, New York, N.Y. |

―――――――

-2-

KATZMANN, *Circuit Judge*:

In 1997, the Board of Immigration Appeals construed § 601(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") to provide that the forced sterilization or abortion of one spouse is an act of persecution against the other spouse and that, as a result, the spouses of those directly victimized by coercive family planning policies are *per se* as eligible for asylum as those directly victimized themselves. *See In re C-Y-Z-*, 21 I. & N. Dec. 915 (BIA 1997) (en banc). The BIA did not, however, identify the specific statutory language pursuant to which it deemed spouses eligible for asylum under IIRIRA § 601(a), nor did the BIA endeavor to explain the reasoning motivating its chosen construction. Yet it was at least partially on the basis of the BIA's decision in *C-Y-Z-* that immigration judges ("IJs") – in decisions summarily affirmed by the BIA – denied the asylum applications of the petitioners whose claims we consider here, two of whom (Lin and Zou) are boyfriends of those directly victimized by China's coercive family planning policies, the other of whom (Dong) is the fiancé of a woman directly victimized by such policies.

Because we hold that an immigration judge's construction of the Immigration and Naturalization Act is not entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and because the BIA failed, in *C-Y-Z-*, to articulate a reasoned basis for making spouses eligible for asylum under IIRIRA § 601(a) in the first place, we **REMAND** the instant petitions to the BIA so that the BIA can: (a) more precisely explain its rationale for construing IIRIRA § 601(a) to provide that the "forced sterilization of one spouse on account of a ground protected under the Act is an act of persecution against the other spouse" and that, as a result, the spouses of those directly victimized by coercive family planning policies are *per se* as eligible for asylum as those directly victimized themselves, *C-Y-Z-*, 21 I. & N. Dec. at 919; and

-3-

(b) clarify whether, when, and why boyfriends and fiancés may or may not similarly qualify as refugees under IIRIRA § 601(a). We retain jurisdiction to rule on the instant petitions after disposition of the remand.

## I.    BACKGROUND

The Immigration and Naturalization Act ("INA" or "Act") vests the Attorney General with the discretionary authority to grant asylum to any alien who is a "refugee," that is, a person unable or unwilling to return to his or her native country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42).

Prior to 1996, the BIA construed the Act to permit victims of China's coercive family-planning policy to claim "refugee" status only if the victims demonstrated that China's family-planning policy had been or would be "selectively applied" to them on the basis of a protected ground. *See In re Chang*, 20 I. & N. Dec. 38, 44 (BIA 1989). But in 1996, Congress amended the statutory definition of "refugee" to broaden the number of individuals eligible for asylum in connection with coercive family-planning policies such as China's. To wit, Congress provided, in § 601(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), that:

> [A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

*See* Pub. L. No. 104-208, § 601(a), Title VI-A, 110 Stat. 3009-546, 3009-689 codified at 8 U.S.C. § 1101(a)(42).

Not long thereafter, the BIA held that, under IIRIRA § 601(a), the forced sterilization or abortion of one spouse is an act of persecution against the other spouse and that, as a result, the spouses of those directly victimized by coercive family planning policies are *per se* as eligible for asylum as those directly victimized themselves. *In re C-Y-Z-*, 21 I. & N. Dec. 915 (BIA 1997) (en banc). Unfortunately, as the Third Circuit has noted and as we will discuss in greater detail below, the BIA "did not explain the basis for this conclusion," *Cai Luan Chen v. Ashcroft*, 381 F.3d 221, 225 (3d Cir. 2004), nor did the BIA clarify or supplement its analysis in any subsequent opinion.

Yet it was at least partially on the basis of the BIA's decision in *C-Y-Z-* that IJs denied the asylum applications of the petitioners whose claims we consider here:

Shi Liang Lin claims that he suffered persecution in China when his girlfriend – whom he could not then legally marry because of her young age – was forced to have an abortion. However, the IJ denied Lin's application on the ground that it would not be "appropriate to expand . . . *Matter of C-Y-Z-* to include unmarried couples." The IJ reasoned that such an expansion would be inappropriate because, *inter alia*, Congress had imposed a 1,000 person-per-year cap on the number of persons eligible for asylum under IIRIRA § 601(A) and, given this cap, opening the immigration floodgates to non-spouses could jeopardize the ability of those individuals more directly harmed by coercive family-planning policies to secure immigration relief.[1]

---

[1] We note that the 1,000 person-per-year cap has been lifted by § 101(g) of the recently enacted REAL ID Act. *See* REAL ID Act of 2005, Pub. L. No. 109-13, § 101(g), 119 Stat. 231 (May 11, 2005) (repealing the IIRIRA provision that initially imposed the cap). Accordingly, a construction of IIRIRA § 601(a) can no longer rely – in whole or in part – on the existence of an annual cap, as did the IJ's construction of § 601(a) in *Lin*.

Another IJ similarly rejected petitioner Xian Zou's claim that he suffered past persecution when his girlfriend was forced to have an abortion.[2]  In Zou's case, the IJ cited *C-Y-Z-,* but argued – without providing any meaningful analysis – that there was "absolutely no way that Section 101(a)(42) of the Immigration and Nationality Act and supporting case law apply [to Zou]" because Zou had not married his girlfriend in either a traditional or legal ceremony.

Finally, an IJ denied the application of petitioner Zhen Hua Dong, who sought asylum in connection with the persecution of his *fiancée*, unlike petitioners Lin and Zou who sought asylum in connection with the persecution of their respective *girlfriends*.   Dong claims that his fiancée discovered that she was pregnant during a routine exam in August 1998 and was forced to have an abortion that same day.  Dong further claimed that he, himself, was warned by family planning officials that he would be fined and sterilized if his fiancée became pregnant again.  Finally, Dong claimed that his fiancée became pregnant for a second time in the summer of 1999 and that although he was able to flee, she ultimately was subjected to a second forced abortion in November 1999. Although all of Dong's allegations were deemed credible (pursuant to a stipulation of the parties), the IJ held that Dong failed to establish eligibility for asylum.  The IJ argued that although the BIA held, in *C-Y-Z-*, that "the spouse of a person who was forced to undergo an abortion or sterilization pursuant to a coercive population control program is . . . a refugee under [IIRIRA § 601(a)]," the BIA has not "further extended the protections of this amended definition of refugee to fiancées or

_____

[2] Zou also claims to have vocally protested the decision to subject his girlfriend to a forced abortion and that, in the wake of this protest, family planning officials pushed him and threatened him.  The IJ deemed this aspect of Zou's claims not credible. Given that we are otherwise remanding Zou's case, we need not and do not assess the probity of this particular credibility determination. We also note that the IJ in Zou's case expressly stated that "[w]ith respect to the issue of the respondent's girlfriend's abortion" he would "make neither a negative or positive credibility finding."

girlfriends or boyfriends of people who have been forced to undergo an involuntary abortion or sterilization." Accordingly, the IJ held that Dong could not establish eligibility for asylum in connection with his fiancée's forced abortions.

The BIA summarily affirmed the IJ's decision in each of these three cases pursuant to the BIA's streamlining regulations – that is to say, in each of these three cases, a single Board member affirmed, without opinion, the *results* of the IJ's decision below. *See* 8 C.F.R. § 1003.1(e)(4).

## II.    DISCUSSION

It is well-settled that when the BIA summarily affirms an IJ's decision, we review the decision of the IJ directly. *Secaida-Rosales v. INS*, 331 F.3d 297, 305 (2d Cir. 2003). Yet we have never before discussed whether an IJ's construction of the INA is entitled to review under the deferential standards set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), where, as here, an IJ has engaged in *statutory construction* and the BIA has summarily affirmed. Accordingly, we address this question at the threshold.

This Circuit has previously recognized that "[a]n agency interpretation 'qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, *and* that the agency interpretation claiming deference was promulgated in the exercise of that authority." *Coke v. Long Island Care at Home, Ltd.*, 376 F.3d 118, 130 (2d Cir. 2004) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001)). Here, it is beyond cavil that Congress has, as a general matter, delegated the authority to make immigration rules carrying the force of law; the INA, after all, unambiguously vests such power in the Attorney General, among others. *See, e.g.*, 8 U.S.C. § 1103(a)(1) (providing that the Attorney General's determinations and rulings on questions of immigration law are controlling); 8 U.S.C. §

-7-

1158(d)(5)(B) (providing that the Attorney General "may provide by regulation for any other conditions or limitations on the consideration of an application for asylum not inconsistent with this [Act]"); *see also INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (holding that principles of *Chevron* deference are applicable to the Attorney General's constructions of the INA, generally, and to the BIA, specifically, precisely because Congress has delegated rule-making power to the Attorney General and the Attorney General has, in turn, further delegated rule-making power to the BIA).

The operative question is whether an IJ's summarily affirmed construction of the INA is "promulgated in the exercise of" the Attorney General's authority. We hold that it is not for two principal reasons. First, although the Attorney General has expressly delegated rule-making authority to the *BIA*, s*ee, e.g.*, 8 C.F.R. § 1003.1(g),[3] the government does not point to any rule or regulation indicating that the Attorney General ever intended to – let alone did in fact – delegate similar rule-making authority to the IJs*,* themselves. Indeed, agency practice strongly suggests that the more than 200 IJs employed by the Executive Office for Immigration Review at 53 immigration

---

[3] 8 C.F.R. § 1003.1(g) provides:
> Decisions as precedents. Except as Board [i.e. BIA] decisions may be modified or overruled by the Board or the Attorney General, decisions of the Board, and decisions of the Attorney General, shall be binding on all officers and employees of the Department of Homeland Security or immigration judges in the administration of the immigration laws of the United States. By majority vote of the permanent Board members, selected decisions of the Board rendered by a three-member panel or by the Board en banc may be designated to serve as precedents in all proceedings involving the same issue or issues. Selected decisions designated by the Board, decisions of the Attorney General, and decisions of the Secretary of Homeland Security to the extent authorized in paragraph (i) of this section, shall serve as precedents in all proceedings involving the same issue or issues.

courts around the country[4] lack the juridical power to issue decisions that are in any way binding on future parties, on one another, or on the BIA. *Cf. Mead Corp.*, 533 U.S. at 233 (noting, in declining to afford Chevron deference to the agency construction there at issue, that the agency itself treated the classifications it had made as binding only in limited circumstances and that, furthermore, "[a]ny suggestion that rulings intended to have the force of law are being churned out at a rate of 10,000 a year at an agency's 46 scattered offices is simply self-refuting"). Absent the power to issue binding decisions, IJs cannot, themselves, be said to possess the requisite ability to issue, on behalf of the Attorney General, a "rule" carrying the force of law – because one of the hallmarks of a legal "rule" is that it will, in fact, apply equally in all cases of a similar kind. *See Black's Law Dictionary* 1357 (8th ed. 2004) (defining "rule" to mean "an established and authoritative standard or principle; a general norm mandating or guiding conduct or action in a given type of situation"). Indeed, were we to accord *Chevron* deference to non-binding IJ statutory interpretations, we could find ourselves in the impossible position of having to uphold as reasonable on Tuesday one construction that is completely antithetical to another construction we had affirmed as reasonable the Monday before. Such a scenario cannot be countenanced in a system of law.

Second and similarly, we believe that a summarily affirmed IJ decision also cannot be construed as a "rule" promulgated by the *BIA* on behalf of the Attorney General. The government stressed at oral argument that a summarily affirmed IJ decision is deserving of deference because the BIA – in summarily affirming – deems the IJ's decision to be a "final agency determination" pursuant to 8 C.F.R. § 1003.1(e)(4). However, the fact that the BIA deems an IJ's decision to be a

---

[4] *See* U.S. Department of Justice, Executive Office for Immigration Review, Office of the Chief Immigration Judge, http://www.usdoj.gov/eoir/ocijinfo.htm.

"final agency determination" does not transform the IJ's legal construction into a BIA rule carrying the force of law. For one thing, the BIA's streamlining regulations expressly provide that when the BIA summarily affirms an IJ's decision, the BIA approves only "the result reached in the decision below; it does not necessarily imply approval of all of the reasoning of that decision." *See id.* Thus, when a court of appeals is faced with a BIA's summary affirmance, the court has no way of knowing that the BIA has, in fact, adopted the IJ's particular construction of a statute when the court is asked to assess its reasonableness. And in addition, as already discussed above, agency practice suggests that neither the BIA, nor the IJs, treat summary affirmances as binding in any event.

There is, in sum, no reason to believe that an IJ's summarily affirmed decision contains the sort of authoritative and considered statutory construction that *Chevron* deference was designed to honor. As a result, we decline to extend *Chevron* deference to any statutory construction of the INA set forth in a summarily affirmed IJ opinion.

Of course, individual IJ decisions may be entitled to the lesser form of deference established under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), to the extent that such decisions possess "those factors which give [the agency's interpretation] power to persuade, if lacking power to control." *Id.* at 140; *see also Mead Corp.*, 533 U.S. at 235-36. We need not consider this issue here, however, because even assuming *arguendo* that IJ decisions are generally entitled to *Skidmore* deference, the IJ decisions before us do not possess any persuasive power. The reason is simple: because the BIA failed, in *C-Y-Z-*, to articulate a reasoned basis for making spouses eligible for asylum under IIRIRA § 601(a), IJs cannot possibly advance principled – let alone persuasive – reasons to distinguish between, on the one hand, the BIA's decision to create spousal eligibility under IIRIRA § 601(a), and, on the other hand, the eligibility of boyfriends and fiancés under that same statutory provision.

-10-

For much the same reason, it is impossible for us to properly determine, upon a *de novo* review of IIRIRA § 601(a), whether to affirm or reverse the results reached in the instant petitions. Although admittedly this Court has previously deferred to the result of the BIA's decision in *C-Y-Z-, see, e.g., Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 (2d Cir. 2004), a fresh look at *C-Y-Z-* reveals that the BIA never adequately explained how or why, in the first instance, it construed IIRIRA § 601(a) to permit spouses of those directly victimized by coercive family planning policies to become eligible for asylum themselves. To be clear, we do not suggest that there can be no such basis – on that we take no stand whatsoever – only that the BIA failed to supply it. The BIA never, for example, identified the specific statutory language pursuant to which it deemed spouses eligible for asylum under IIRIRA § 601(a), nor did the BIA endeavor to explain the reasoning motivating its desired construction. Frankly, it appears to us that the BIA's analysis in *C-Y-Z-* rested largely on the Immigration and Naturalization Service's concession in that case. *See, e.g., In re C-Y-Z-*, 21 I. & N. Dec. at 918 (stating that "[t]he Service also conceded . . . that the husband of a sterilized wife can essentially stand in her shoes"); *id.* (noting that "[w]e find that the applicant in this case has established eligibility for asylum by virtue of his wife's forced sterilization. This position is not in dispute, for the Service conceded in its appeal brief that the spouse of a woman who has been forced to undergo an abortion or sterilization procedure can thereby establish past persecution"); *id.* at 919 (holding that "[i]n view of the enactment of section 601(a) of the IIRIRA and the agreement of the parties that forced sterilization of one spouse on account of a ground protected under the Act is an act of persecution against the other spouse, the applicant has established past persecution").

Thus, because the BIA has never adequately explained its rationale for establishing *spousal* eligibility under IIRIRA § 601(a), we cannot reasonably determine the status of boyfriend and fiancé

-11-

eligibility under IIRIRA § 601(a). Of course, it may be the case that permissible distinctions can be drawn between spousal eligibility, on the one hand, and boyfriend and fiancé eligibility, on the other. It may also be the case, however, that the rationale for spousal eligibility applies with equal logic and force to the eligibility of boyfriends and fiancés. Until the BIA has clarified why it established spousal eligibility in the first instance, we cannot know.[5]

The government suggests that we may simply supply our own rationale for the BIA's decision in *C-Y-Z-* and then act accordingly. But the Supreme Court has made clear that "[i]t will not do for a court to be compelled to guess at the theory underlying [a particular] agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive." *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947). It is not difficult to understand why. Were courts obliged to create and assess ex-post justifications for inadequately reasoned agency decisions, courts would, in effect, be conscripted into making policy. Such an activity is, for myriad and obvious reasons, more properly the province of other bodies, particularly where, as here, the other body is an agency that can bring to bear particular subject matter expertise. Accordingly, we must reject the government's entreaty to adjudicate by ex-post hypothesis.

For all the reasons stated above, we remand the instant petitions to the BIA so that the BIA can: (a) more precisely explain its rationale for construing IIRIRA § 601(a) to provide that the "forced sterilization of one spouse on account of a ground protected under the Act is an act of

---

[5] We note that our Court has recently held that a parent or parent-in-law of a person persecuted under a coercive family planning policy is not *per se* as entitled to asylum under IIRIRA § 601(a) as those directly victimized themselves. *See Ai Feng Yuan v. U.S. Dep't of Justice*, Nos. 02-4632-ag, 02-4635-ag, 2005 WL 1745200, __ F.3d __ (2d Cir. Jul. 26, 2005). We believe, however, that neither this holding nor, of course, the dicta offered in support of it necessarily compels a specific outcome in the cases before us.

persecution against the other spouse" and that, as a result, the spouses of those directly victimized by coercive family planning policies are *per se* as eligible for asylum as those directly victimized themselves; and (b) clarify whether, when, and why boyfriends and fiancés may or may not similarly qualify as refugees pursuant to IIRIRA § 601(a). This panel retains jurisdiction to rule upon the instant petitions and decide the issues on appeal after the disposition of the remand.