473 F.3d 55
 Felix ROTIMI, Petitioner,
v.
Alberto GONZALES, as Attorney General of the United States, Department of Homeland Security, Michael Chertoff, Secretary, Department of Homeland Security, District Director, New York District, Immigration and Customs Enforcement, Respondents.
 Docket No. 06-0202-AG.
 United States Court of Appeals, Second Circuit.
 Argued: December 11, 2006.
 Decided: January 3, 2007.
 
 Daniel Shabasson, Pollack, Pollack, Isaac & DeCicco, New York, NY, for Petitioner.
 Dione M. Enea, Special Assistant United States Attorney, of counsel (Scott Dunn, Assistant United States Attorney, on the brief), for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Brooklyn, NY, for Respondents.
 Before FEINBERG, MESKILL, KATZMANN, Circuit Judges.
 PER CURIAM.
 
 
 1
 At issue in this case is the construction of INA § 212(h), 8 U.S.C. § 1182(h), which requires that to be eligible for a waiver of removal, a Lawful Permanent Resident ("LPR") must have "lawfully resided continuously" in the United States for seven years before the initiation of deportation proceedings. Petitioner Felix Rotimi was denied such relief because the BIA—in a single-member nonprecedential decision—found that, as a matter of law, his period of residence as an asylum seeker was not "lawful." Because we hold that a nonprecedential decision by a single member of the BIA should not be accorded Chevron deference, see Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), we remand petitioner's case to provide the BIA with the opportunity to construe the "lawfully resided continuously" provisions of § 212(h) in a precedential opinion. We vacate the BIA's decision and remand.
 
 BACKGROUND
 
 2
 The facts of this case are undisputed. Felix Rotimi entered the United States on June 7, 1995. He was first admitted with a visitor visa, which allows for a six month stay. In September 1995, before his visa expired, Rotimi applied for political asylum. The asylum office denied his application and began removal proceedings (then called deportation proceedings) on May 17, 1996. Petitioner was referred to an IJ and his hearing was continued. On July 12, 1996, Rotimi married a United States citizen and, shortly thereafter, filed an application for adjustment of status under INA § 245, 8 U.S.C. § 1255. His wife's petition for an immigrant visa on his behalf was approved in November 1996; on August 13, 1997, his adjustment application was granted and Rotimi became an LPR. Before his adjustment application was granted, on March 20, 1997, petitioner withdrew his application for political asylum.
 
 
 3
 On May 22, 2002, petitioner was convicted of attempted criminal possession of a forged instrument in the second degree, in violation of the New York Penal Law, for a crime he committed in January 2002. He was sentenced to a five-year period of probation. In November 2002, petitioner returned from a brief trip abroad; at John F. Kennedy airport in New York he sought admission as a returning LPR. However, because his conviction was for a crime of moral turpitude, his inspection was "deferred." On June 9, 2003, the INS charged him with being inadmissible and initiated removal proceedings by serving him with a Notice to Appear ("NTA"). This was just over seven years after the date of Rotimi's initial admission in 1996.
 
 
 4
 During the removal proceedings, petitioner conceded that he was removable and applied for a waiver pursuant to INA § 212(h), 8 USC § 1182(h) (hereinafter a "212(h) waiver"), based on the extreme hardship to his United States citizen wife if he were deported. A § 212(h) waiver requires the immigrant to have "lawfully resided continuously" in the United States for seven years before initiation of removal proceedings. Rotimi argued that he was eligible for § 212(h) relief because between 1996 and 2003 he had been lawfully in the United States as either a visitor, asylum seeker, adjustment applicant, or LPR. The IJ disagreed and held that "filing an application for asylum in 1995 did not exten[d Rotimi's] non-immigrant stay in the United States nor did it confer on the respondent any lawfulness in his continued residence in the United States." Because the IJ found that petitioner did not meet the statutory requirements, she did not consider whether petitioner warranted § 212(h) relief in the exercise of her discretion.
 
 
 5
 The BIA, in a nonprecedential decision by a single member, denied petitioner's appeal for the reasons stated by the IJ. The decision defined a "period of lawful residence" as "one in which the alien has affirmatively been accorded the right or privilege of residing here and abides by the rules associated with that right or privilege," without providing a source for this definition. It stated, without explanation, that "[a]lthough the respondent submitted an asylum application prior to the expiration of his authorized status, that act did not make the respondent's continued residence in this country `lawful' in any legal sense. That act merely limited the period that may be counted in determining the respondent's period of `unlawful presence.'"
 
 
 6
 Petitioner brings this appeal and argues that: (1) the BIA erred in holding that he had not "lawfully resided continuously" in the United States for seven years as required by § 212(h) and (2) the BIA violated its own regulations by allowing a single BIA member to issue an opinion interpreting a novel legal issue.
 
 DISCUSSION
 
 7
 It is undisputed that petitioner had lived in the United States for over seven years before the NTA was issued. The relevant question is whether the entirety of this period should constitute time that he "lawfully resided continuously" as required for a § 212(h) waiver.
 
 
 I. Standard of Review
 
 
 8
 As the meaning of "lawfully resided continuously" is not self-evident, we would ordinarily proceed to a full Chevron analysis. However, the Supreme Court has held that an "administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." United States v. Mead Corp., 533 U.S. 218, 226-27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Because there is no indication that the BIA's nonprecedential single-member decision was "promulgated" under its authority to "make rules carrying the force of law," id., we do not accord it Chevron deference.
 
 
 9
 We considered a related question in Shi Liang Lin v. United States Department of Justice, 416 F.3d 184, 187 (2d Cir.2005), and we held that an IJ's interpretation of an INA provision, summarily affirmed by the BIA, was not entitled to Chevron deference. Much of the reasoning in Shi Liang Lin applies with equal strength here. As we have noted, "the BIA itself accords no precedential value to its own unreported decisions." Gousse v. Ashcroft, 339 F.3d 91, 101 (2d Cir.2003); see 8 C.F.R. § 1003.1(g). While the BIA's regulations provide that one of the Board's powers is "provid[ing] clear and uniform guidance . . . on the proper interpretation and administration of the Act," the relevant regulation also states that the BIA shall provide such guidance "through precedent decisions." 8 C.F.R. § 1003.1(d)(1) (emphasis added). Thus, the decision here is, by the BIA's own regulations, not precedential, indicating that it was not intended to "carry[] the force of law," Mead Corp., 533 U.S. at 227, 121 S.Ct. 2164.
 
 
 10
 Having decided that the opinion here does not merit Chevron deference, we believe the best course, at this stage, is to remand to the BIA to provide it with the opportunity to exercise its authority delegated by Congress and provide a precedential interpretation of the relevant statutory provision pursuant to that authority. Our discussion in Jian Hui Shao v. Board of Immigration Appeals, 465 F.3d 497, 501-02 (2d Cir.2006), is instructive as to the value of such a remand, and we need not restate its rationale here. Furthermore, as Jin Hui Shao notes, "[o]ur decision to remand this question of law to the BIA for resolution in the first instance is supported by recent decisions of the Supreme Court of the United States and our Court." Id. at 503 (citing cases).
 
 
 11
 On remand, in construing "lawfully resided continuously" as used in § 212(h), we would benefit from the BIA's consideration of the term lawful—including its use in relation to asylum seekers and adjustment applicants—in other provisions of the INA and the implementing regulations, along with Congress's intent in providing for a § 212(h) waiver. In reviewing the BIA's definition of lawful in § 212(h), we would also benefit from an explanation of the source of the definition and analysis as to whether an asylum seeker or an adjustment applicant meets that definition of "lawful."
 
 
 II. Review of Streamlining Procedure
 
 
 12
 Rotimi also argues that the BIA violated its own regulations (discussed above) in not assigning his case to a three-member panel. As counsel for Rotimi conceded at oral argument, this argument is foreclosed by Kambolli v. Gonzales, 449 F.3d 454, 465 (2d Cir.2006), where we held that "we lack jurisdiction to review a claim that a single BIA member erred in deciding to resolve unilaterally an appeal of an IJ's order and not to refer the case to a three-member BIA panel."
 
 CONCLUSION
 
 13
 We GRANT Rotimi's petition for review, VACATE the BIA's decision, and REMAND for proceedings consistent with this opinion. This panel retains jurisdiction to decide the issues on appeal after the disposition of the remand.