POOLER, Circuit Judge.
We are asked to determine whether the Immigration and Nationality Act's ("INA") exception for late filing applies only to changed circumstances underpinning a successful claim, or whether the changed circumstances permit an application for asylum on multiple bases, including bases that are unrelated to the changed circumstances. We hold that the plain language of the statute unambiguously permits an applicant to raise multiple claims in her asylum application, even if the changed circumstance relates only to one proffered basis for asylum. Accordingly, we grant the petition for review and remand the application to the Board of Immigration Appeals ("BIA") for the limited purpose of granting Yang's application for asylum.[1]
BACKGROUND
Yan Yang was born in China in 1973. In September 1992, Yang met her husband, Shen Zhonghua, while she was working in a garment factory in Shenzhen. On July 6, 1994, Yang and Zhonghua returned to his hometown of Wutong Town to register their marriage with the government. Yang and her husband were both required to submit to a mandatory physical examination at a hospital before the local government would register their marriage. This exam revealed that Yang was "pregnant without prior authorization" since she and Zhonghua were not yet married. Certified Administrative Record ("CAR") at 536. Yang was immediately forced to have an abortion.
Yang entered the United States on a tourist visa on June 3, 2002, but remained in the United States after her temporary visa expired and gave birth to her U.S.-citizen son in October 2004. In July 2012, Yang began attending a Christian church and was baptized into the church on September 23, 2012.
On her own initiative, prior to any removal proceedings, Yang affirmatively filed an application for asylum on October 17, 2012 on two bases: her forced abortion in China and her recent conversion to Christianity. Though asylum applications must be filed within one year of the applicant's arrival in the United States, 8 U.S.C. § 1158(a)(2)(B), applications may be filed beyond that deadline if the applicant can demonstrate "changed circumstances which materially affect the applicant's eligibility for asylum," 8 U.S.C. § 1158(a)(2)(D). Yang submitted her application over a decade after her arrival to the United States, but within one month of her conversion to Christianity.[2]
On December 11, 2012, however, she was served with a Notice to Appear charging her with removability for overstaying her visa. On March 11, 2015, the Immigration Judge ("IJ") denied her application for asylum. The IJ determined that the exception for "changed circumstances" applied only to Yang's religious asylum claim, *30 effectively severing the application into its two separate claims. The IJ found that Yang was credible on all counts, but that there was insufficient evidence of persecution of Christians in China to grant the asylum application on that basis. The IJ did not consider Yang's asylum claim based on her forced abortion because the IJ determined that the claim was not timely filed, but the IJ found Yang's story credible and granted her withholding of removal on the basis of that claim. On September 20, 2016, the IJ's decision was affirmed in all respects by the BIA.
DISCUSSION
"When the BIA does not expressly adopt the IJ's decision, but its brief opinion closely tracks the IJ's reasoning, this Court may consider both the IJ's and the BIA's opinions for the sake of completeness." Zaman v. Mukasey, 514 F.3d 233, 237 (2d Cir. 2008) (internal quotation marks omitted). Neither the IJ nor the BIA offered any substantive analysis of the question facing us in this appeal, namely, whether a changed circumstance affecting eligibility for one asylum claim renders the properly filed asylum application timely filed for all claims. Instead, both the IJ and the BIA assumed that the plain language of the statute barred the IJ from considering Yang's forced abortion claim. Yang argues to this Court, as she did before the BIA, that the plain language of the statute requires consideration of her full asylum application.
The government urges us to defer to the BIA's decision insofar as that decision has the "power to persuade." Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 S.Ct. 124 (1944); see also Christensen v. Harris Cty., 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (holding that "interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law-do not warrant Chevron-style deference," but may be entitled to Skidmore deference). But because we find there is no ambiguity in the statutory language, and that "Congress has directly spoken to the precise question at issue," Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), there is no need for deference or remand under any of our existing models of deference to agency adjudication. We additionally observe that it is undisputed that an IJ's construction of the INA is entitled to no deference, Li v. INS, 453 F.3d 129, 136 (2d Cir. 2006), and we have previously held that "the BIA's nonprecedential single-member decision" is not accorded Chevron deference, because it was not "promulgated under its authority to make rules carrying the force of law." Rotimi v. Gonzales, 473 F.3d 55, 57 (2d Cir. 2007)(internal quotation marks omitted). There is simply no basis on which deference is appropriate-let alone required-in this case. Because we are asked to resolve "a pure question of statutory construction,"[3] which is a question of law "for the courts to decide," INS v. Cardoza-Fonseca, 480 U.S. 421, 446, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), we therefore review these claims in the first instance, without remanding to the agency. Our review of this question of law is de novo. Adams v. Holder, 692 F.3d 91, 95 (2d Cir. 2012).
*31 I. Plain Language of the Statute
"Our analysis begins with the text" of Section 1158(a)(2)(D), "and we look to both the language itself and the specific context in which that language is used." Merit Mgmt. Grp., LP v. FTI Consulting, Inc., ___ U.S. ___, 138 S.Ct. 883, 893, 200 L.Ed.2d 183 (2018) (internal quotation marks and brackets omitted). In doing so, we focus our attention on two key phrases within the section that are dispositive of the question presented in this appeal.
A. "An application for asylum"
In our first look at the plain language of the statute, we observe that the relevant section clearly states that "[a]n application for asylum of an alien may be considered. . . if the alien demonstrates . . . changed circumstances which materially affect the applicant's eligibility for asylum." 8 U.S.C. § 1158(a)(2)(D) (emphasis added). The plain language of the statute thus makes clear that changed circumstances provide for the consideration of an application for asylum, as opposed to a specific claim for asylum.
This reading of the plain language is reinforced by the specific context in which this provision appears. In aid of this effort, we examine the section headings and organizational structure of the relevant section of the INA. "Although section headings cannot limit the plain meaning of a statutory text, they supply cues as to what Congress intended." Merit Mgmt., 138 S.Ct. at 893 (internal citation and quotation marks omitted). The section headings and organization of this section of the INA evince a clear intent to address the ability to file an application for asylum, rather than an ability to be granted asylum or the ability to file a particular asylum claim.
Indeed, the relevant section of the INA is titled "Authority to apply for asylum."[4] That section is further divided into three parts: (1) In general, (2) Exceptions, and (3) Limitations on judicial review. The first part ("In general") establishes the basic framework establishing the authority to apply for asylum:
(1) In general. - Any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 1225(b) [regarding the inspection of arriving aliens].[5]
8 U.S.C. § 1158(a)(1). After laying out the basic premise regarding who may apply for asylum, Section 1158(a) next turns to the "Exceptions" to the general framework permitting asylum applications in order to establish three specific situations in which foreign nationals may not apply for asylum (in other words, a foreign national's application for asylum may not be considered). 8 U.S.C. § 1158(a)(2). The statute explains that the general framework regarding asylum *32 applications "shall not apply:" when the foreign national may be removed to a "safe third country," Section 1158(a)(2)(A), when the foreign national has not "demonstrate[d] by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States," Section 1158(a)(2)(B), or when the foreign national has "previously applied for asylum and had such application denied," Section 1158(a)(2)(C).[6] The "Exceptions" section, however, also contains an exception to the exception which is the issue of this appeal: the existence of "changed circumstances."[7] Section 1158(a)(2)(D).
The exclusion from consideration of subsequent asylum applications and applications filed after the one-year deadline does not apply in two specific circumstances:
An application for asylum of an alien may be considered notwithstanding [the bars for late filings or successive filings], if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified in [the paragraph establishing the one-year filing deadline].
8 U.S.C. § 1158(a)(2)(D). The statutory language is structured to directly refer to the preceding portions of the section. The statute states that "[a]n application for asylum . . . may be considered, notwithstanding [the time limit and previous application bars] if the alien demonstrates. . . ." Id. (emphasis added). In other words, the general rule is that applications may not be considered when they are filed after the time limit or when previous applications have been denied, but this section establishes that those normal bars to applications do not apply if the foreign national can demonstrate changed circumstances or extraordinary circumstances regarding the filing delay. The language and structure of this section make clear that the existence of changed circumstances "operates as an exception" to § 1158(a)(2)(B-C). Merit Mgmt., 138 S.Ct. at 893; see also id. (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 126 (2012) ("A dependent phrase that begins with notwithstanding indicates that the main clause that it introduces or follows derogates from the provision to which it refers")).
The key observation for purposes of this appeal is that the exception is to the bar to considering applications, not claims. Recall that the "Exceptions" subsection is part of the larger section titled "Authority to apply for asylum" and that the language of the relevant provision titled "Changed circumstances" addresses only the "application for asylum," as opposed to the specific claim or claims within an application. Even if we were to substitute the word "request" for "application," as the dissent speculates Congress intended, the observation remains the same: the exception is to the bar to considering "requests," not claims. An individual may make one "request" for asylum because she fears religious persecution and because she was forced to have an abortion. Indeed, there is simply no basis for a claim-specific limitation in the statutory text itself, which refers only to applications for asylum. Or, more technically, the dependent clause *33 containing the statutory bars derogates from the main clause providing for the consideration of an application for asylum, with no additional limiting language. Rather than grapple with this textual clarity, the dissent fixates on the context of the statute and its view of the statute's true purpose to call into question the "logic" of the majority view. But in doing so, and to generate ambiguity, the dissent puts its interpretation of legislative history before plain text.
Indeed, an examination of "the broader statutory structure," Merit Mgmt., 138 S.Ct. at 893, confirms our interpretation of the language regarding "changed circumstances." The alternative view-that the "changed circumstance" must relate directly to the claim on which asylum is eventually granted-runs counter to the language and organizational structure of the statute. In essence, it would collapse into one step the two separate steps of applying for asylum and determining whether asylum should actually be granted. These two steps are plainly two separate sections of the statute-Authority to apply for asylum, Section 1158(a), and Conditions for granting asylum, Section 1158(b)-which suggests to us that Congress assumed that determining authority to simply apply for asylum would be a separate step from determining whether an applicant could be granted asylum. Indeed, the asylum application itself contemplates that an applicant may apply for asylum on multiple bases, listing various possible claims for asylum (based, e.g., on race, political opinion, religion) and instructing the applicant to "check the appropriate box(es)" to explain why they are applying for asylum or withholding of removal. U.S. Citizenship and Immigration Services, Form I-589, Application for Asylum and for Withholding of Removal, Part B(1). This Court has previously articulated this view of the two-step process, observing that "it is not necessary for the applicant to identify the correct ground; the fact finder should consider all or any combination of them" when reviewing an asylum application. Osorio v. INS, 18 F.3d 1017, 1027 (2d Cir. 1994). It is clear to us that the plain language of the statute refers to the application as a whole.
B. "Materially affect the applicant's eligibility for asylum"
The government argues that "changed circumstances must relate to the applicant's eligibility for asylum" and asserts that this paraphrase of the statutory language demands that we deny Yang's petition for review. We disagree. To state the matter very directly, though an asylum applicant is indisputably required to demonstrate a changed circumstance that "materially affect[s] the applicant's eligibility for asylum," Section 1158(a)(2)(D), the plain language of this requirement is simply that the changed circumstance must "materially affect" an applicant's eligibility for asylum. And surely that is precisely what occurred in this case. The IJ determined that Yang had in fact demonstrated such a changed circumstance, because it is impossible to be religiously persecuted on the grounds of Christian faith before becoming a Christian.
Despite the dissent's worry that "all an asylum seeker need do" to avoid the one-year bar is "allege changed circumstances," not every "changed circumstance" will render an applicant eligible for asylum; indeed, very few will. But so long as the applicant can demonstrate a change in circumstance that materially affects her eligibility to apply for asylum, there is simply nothing in the plain statutory language to suggest-let alone demand-that only that claim may be reviewed. As the Ninth Circuit noted in Vahora v. Holder, on which the dissent relies, the changed *34 circumstances exception to the one-year filing requirement was "intended to be broad," not limited. 641 F.3d 1038, 1045 (9th Cir. 2011). The text of the statute comports with this intent. We simply do not see any portion of the statute articulating the view that the government urges upon us. In order to argue the contrary, the dissent variously maintains that "eligibility" means "a determination that an applicant is a refugee" and the applicant's "successful showing that she is a refugee." The use of such shifting definitions highlights a misapprehension of the statutory context; the dissent conflates two separate steps of the asylum process in a manner that is flatly contradicted by the statutory text.
Because we have carefully read the statutory text and find the meaning of the statutory language clear and unambiguous, we have no need to look further. Our search for meaning thus begins and ends with the statutory language itself. See Marvel Characters, Inc. v. Simon, 310 F.3d 280, 290 (2d Cir. 2002) ("When the language of a statute is unambiguous, judicial inquiry is complete.") (internal quotation marks omitted). If a foreign national is able to demonstrate "changed circumstances which materially affect the applicant's eligibility for asylum," that individual may file their "application for asylum" "notwithstanding" the bar on applications filed after one year of the foreign national's arrival in the United States.
II. Yang's Application for Asylum
As dictated by the statutory language governing asylum applications, Yang's untimely application fell within the "time limit" exception to the general rule permitting foreign nationals physically present in the United States to apply for asylum. Yang, however, successfully argued before the IJ and the BIA that her application also fell within the "changed circumstances" exception to the exception, because she had recently converted to Christianity. Yang's asylum application presented two possible bases for asylum: religious persecution and her forced abortion in China. The IJ bifurcated Yang's asylum application and determined that her forced abortion claim was "time-barred" while her religious persecution claim was timely. CAR at 45-46. The IJ thus considered "only her religion-based asylum claim." CAR at 46.
In doing so, the IJ found that "the respondent testified credibly and adequately corroborated her testimony" regarding both her forced abortion and her religious conversion. CAR at 45. The IJ also found that "the respondent has not demonstrated a well-founded fear of future persecution on account of her religion" and thus denied her asylum claim. CAR at 47. The IJ, however, granted Yang withholding of removal under 8 U.S.C. § 1231(b)(3) based on her forced abortion in China. The IJ explained that Yang "testified credibly and provided substantial evidence to demonstrate that she was coerced into an abortion in 1994 because she became pregnant without authorization." CAR at 47. The IJ properly relied on Cao v. U.S. Department of Justice in holding that Yang therefore had an "irrebuttable presumption of a well-founded fear of future persecution" and thus qualified for withholding of removal on that basis. 421 F.3d 149, 156 (2d Cir. 2005). The BIA affirmed the IJ's decision on all grounds.
As Cao recounts, in 1996 Congress amended the definition of "refugee" in the INA to make forced abortions and other population control measures an explicit ground for asylum:
For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo *35 involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion . . . .
8 U.S.C. § 1101(a)(42); see also Cao, 421 F.3d at 155. As Yang's case reminds us, this statutory language does not guarantee that an individual who has undergone a forced abortion will be eligible for asylum; in addition to demonstrating past persecution or a well-founded fear of future persecution, an asylum applicant must show that she meets all the other criteria for asylum and does not fall within one of the statutory bars preventing her from receiving asylum.
Apart from the timeliness issue, the government has raised no other challenge to Yang's application for asylum on the basis of her forced abortion in China. Because we have determined that it was error for the IJ to bifurcate Yang's asylum application and that the "changed circumstances" of her religious conversion made her entire asylum application timely filed, and because the IJ determined Yang was credible on the forced abortion claim, Yang's application for asylum must therefore be granted
CONCLUSION
The plain language of the statute compels our conclusion today that the "changed circumstances" exception to the one-year deadline for an asylum application refers to the entire asylum application, rather than the individual claim. We observe that this reading of the statutory language merely provides an opportunity for an application to be considered by the IJ. The applicant is still required to demonstrate asylum eligibility before that status will be granted.
Yang's petition for review is thus GRANTED and her underlying asylum application is REMANDED to the BIA for the limited purpose of granting the application.

For reasons explained in Section II, the government abandoned any additional challenges to Yang's eligibility for asylum on the basis of her forced abortion in China. Having decided the one issue on appeal, there is no other issue to be decided.

The applicant must file her application within a "reasonable period" in light of the changed circumstances. 8 C.F.R. § 1208.4(a)(4)(ii).

Regarding the issue before us on appeal, there are no decisions from other circuit courts of appeals that directly address it, and there are no precedential BIA opinions on it. Indeed, the BIA has been inconsistent in its non-precedential interpretations of § 1158(a)(2)(D). Compare CAR at 45-46, with In re Chen & Wu, Nos. A089 918 765 & A089 918 766 (B.I.A. Apr. 13, 2012).

Section 1158 of the INA addresses asylum and is divided into five sections: Authority to apply for asylum (subsection a), Conditions for granting asylum (subsection b), Asylum status (subsection c), Asylum procedure (subsection d), and Commonwealth of the Northern Mariana Islands (subsection e). The relevant provision to this appeal appears in subsection a, titled "Authority to apply for asylum."

The immediately preceding section of the INA-Section 1157-addresses refugees. The "In general" portion of Section 1158 appears designed at least in part to clearly distinguish asylees from refugees and to codify the right to apply for asylum.

These exceptions are titled "Safe third country," "Time limit," and "Previous asylum applications," respectively.

The final portion of the "Exceptions" section addresses unaccompanied minors and specifies that the safe third country and time limit bars "shall not apply" to those applicants. 8 U.S.C. § 1158(a)(2)(E).