## TRIANT v. NICOLLS, District Director of United States Department of Naturalization Service, Boston, Mass.
### No. 6689.

District Court, D. Massachusetts.
May 12, 1943.

William Triant and William H. Lewis, Jr., both of Boston, Mass., for petitioner.

Edmund J. Brandon, U. S. Atty., and Gerald J. McCarthy, Asst. U. S. Atty., both of Boston, Mass., for respondent.

HEALEY, District Judge.

This matter was argued on a stipulation of facts and the record of the Immigration Authorities. The stipulation of facts was as follows:

(1) That the petitioner is a native and citizen of Greece, and is a seaman by occupation.

(2) That the petitioner entered the United States at New York, N. Y., on the S/S "Stylianos Chandris" on March 7, 1941.

(3) That the petitioner is in the United States in violation of the Immigration Act of May 26, 1924, 8 U.S.C.A. § 201 et seq., in that after admission as a seaman he has remained in the United States for a longer time than permitted under said Act or the regulations made thereunder.

(4) That the petitioner was arrested on a warrant based upon evidence that after June 30, 1924, he was admitted to the United States for a stipulated temporary period of 60 days, and that he has remained in this country for a longer time than the time for which he was admitted.

(5) That the said alien, George Nick Margarites never acquired a domicile distinct and different from the country of his nativity, whether at Buenos Aires, Argentine Republic, Cardiff, Wales, or any portion of Great Britain.

(6) That said alien signed as a sailor at Cardiff, Wales, on August 9, 1940, on the Steamship "Stylianos Chandris" (p. 5 of the Record).

(7) That the petitioner had a fair and impartial hearing before an immigration inspector in accordance with the United States Immigration Laws, at East Boston, Mass., on February 5, 1943, and that as a result of said hearing a warrant of deportation ordering the petitioner deported to Cardiff, Wales, was issued on March 9, 1943.

(8) It is also stipulated that the only issue in this case is whether or not the petitioner is deportable to Cardiff, Wales.

The facts material to the issue of whether or not the petitioner is deportable to Cardiff, Wales, are as follows:

Prior to his enrollment on the S/S "Stylianos Chandris", the petitioner was employed as a seaman on a vessel other than the S/S "Stylianos Chandris", and was allowed to remain at Cardiff, Wales, for the sole purpose of receiving medical treatment. He then enrolled at Cardiff, Wales, on the S/S "Stylianos Chandris" on August 9, 1940, from which place he sailed to Buenos Aires, Argentine Republic, where, on October 18, 1940, he re-enrolled on the same ship. Concerning this, the petitioner testified: "The Seaman's Book will prove that I signed on the ship at Cardiff, Wales. Every six months we enrolled again on the ship but I originally signed there." The Seaman's Book contained a notation showing that he signed as a sailor at Cardiff, Wales, August 7, 1940, on the S/S "Stylianos Chandris", and there are no entries in the book thereafter. From Buenos Aires, he sailed for Liverpool, then Cork, Ireland, and then to New York, not touching at Cardiff, Wales, after October 18, 1940. On these facts, which were supported by evidence, the Immigration Authorities ordered him deported to Cardiff, Wales. This petition for a writ of habeas corpus was then brought.

U.S.C. Tit. 8, Section 156, 8 U.S.C.A. § 156, insofar as here material, provides as follows: "The deportation of aliens provided for in this chapter shall, at the option of the Attorney General, be to the country whence they came or to the foreign port at which such aliens embarked for the United States; or, if such embarkation was for foreign contiguous territory, to the foreign port at which they embarked for such territory".

The petitioner contends that he is only deportable to the country of his nativity or to a country where he has acquired a domicile. In support of this contention, petitioner cites many cases. However, these cases have all been interpretations of the phrase, "the country whence they came." The statute also says, "or to the foreign port at which such aliens embarked for the United States." Thus an "option" is given as to which country the alien may be de-

ported. Here, the Government proposes to deport the alien to the foreign port at which he embarked for the United States. The question then is what is the foreign port at which the petitioner embarked. He originally enrolled at Cardiff, Wales. He there embarked on his voyage. It is true that he enrolled again at Buenos Aires. However, it is obvious from his testimony that the second enrollment was merely a formal method of continuing in the service of the ship. Thus he testified that "every six months we enrolled again." However, the original enrollment, and the one by which the petitioner himself considered himself signed on for the voyage, was the one at Cardiff, Wales. I am, therefore, of the opinion that the real embarkation for the voyage, and thus for the United States, was at Cardiff, Wales. It follows that the petitioner is deportable to Cardiff, Wales. See memorandum opinion in Glikas v. Tomlinson, 49 F.Supp. 104, decided in February, 1943, by the District Court of the United States for the Northern District of Ohio, Eastern Division, Civil Action No. 21585. See also Matter of Koutelos, 50 F.Supp. 757, District Court of the United States for the Southern District of Texas, Houston Division, Civil Action No. 828, decided December 2, 1942.

The petition is dismissed.