07-5768-ag
Mendis v. Filip

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: October 2, 2008          Decided: January 30, 2009)

Docket No. 07-5768-ag

_____

BALAPUWADUGE SHANTHA MENDIS,

*Petitioner*,

– v. –

MARK FILIP, ACTING U.S. ATTORNEY GENERAL,*

*Respondent.*

_____

Before JACOBS, *Chief Judge*,
MINER and SOTOMAYOR, *Circuit Judges*.

_____

Petitioner Balapuwaduge Shantha Mendis petitions for review of the November 28, 2007 decision and order of the Board of Immigration Appeals ("BIA"), which dismissed his appeal of the April 5, 2006 decision of Immigration Judge Paul A. DeFonzo ordering Mendis removed to the United Kingdom. Mendis argues that he cannot be removed to the United Kingdom under 8 U.S.C. § 1231(b)(2), because he was in the United Kingdom for only a few hours during a stop-over en route to the United States and had no legal right to live or travel there. We conclude that the BIA's decision does not permit adequate appellate review because it does not sufficiently explain why it designated the United Kingdom as a country of removal. We therefore remand to the BIA so that it may issue a precedential opinion that (1) identifies the statutory provision(s) it relies upon in designating the United Kingdom as a country of removal, and (2) explains why the selected statutory provision(s) support Mendis's removal to the United Kingdom. Accordingly, we grant Mendis's petition for review, vacate the order of the BIA, and remand for further proceedings consistent with this opinion.

_____

**\*** Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Mark Filip is substituted for Michael B. Mukasey as Respondent

BENJAMIN B. XUE, Law Offices of Benjamin B. Xue, P.C., New York, NY, *for Petitioner*.

KELLY J. WALLS, Office of Immigration Litigation, United States Department of Justice (Jeffrey S. Bucholtz, Acting Assistant Attorney General; James E. Grimes, Senior Litigation Counsel, *on the brief*), Washington, D.C., *for Respondent*.

SOTOMAYOR, *Circuit Judge*:

Petitioner Balapuwaduge Shantha Mendis petitions for review of the November 28, 2007 decision and order of the Board of Immigration Appeals ("BIA"), dismissing his appeal of the April 5, 2006 decision of Immigration Judge ("IJ") Paul A. DeFonzo, ordering Mendis removed to the United Kingdom. Mendis argues that he cannot be removed to the United Kingdom under 8 U.S.C. § 1231(b)(2), because he was in the United Kingdom for only a few hours during a stop-over en route to the United States and has no legal right to live or travel there. We conclude that the BIA's decision does not permit adequate appellate review because it does not sufficiently explain why it designated the United Kingdom as a country of removal. We therefore remand to the BIA so that it may issue a precedential opinion that (1) identifies the statutory provision(s) it relies upon in designating the United Kingdom as a country of removal, and (2) explains why the statutory provision(s) support Mendis's removal to the United Kingdom. Accordingly, we grant Mendis's petition for review, vacate the order of the BIA, and remand for further proceedings consistent with this opinion.

## BACKGROUND

### A. Mendis's Removal Proceedings

In July 2002, Mendis, a native and citizen of Sri Lanka, entered the United States on a tourist visa. Mendis remained in the United States beyond the expiration of his visa, and on July

2

31, 2004, the Department of Homeland Security charged him as removable from the United States under 8 U.S.C. § 1227(a)(1)(B). Mendis appeared before an IJ in September 2004, where he conceded removability as charged. Mendis sought relief from removal by applying for (1) asylum; (2) withholding of removal under 8 U.S.C. § 1231(b)(3); and (3) withholding of removal under the Convention Against Torture ("CAT"). In the alternative, Mendis sought voluntary departure. In support of his application, Mendis alleged that he had been arrested, detained, and beaten by the Sri Lankan military because the army believed that he had supplied banned items to the rebel Liberation Tigers of Tamil Eelam. He also claimed that an army officer advised him to go into hiding.

At two separate master calendar hearings in September and November 2004, Mendis declined to designate a removal country under § 1231(b)(2)(A). The IJ designated Sri Lanka, Mendis's country of citizenship, as a country of removal at both hearings. At an individual merits hearings in April 2006, Mendis testified in support of his application for relief from removal, detailing the persecution he had faced in Sri Lanka. During this hearing, Mendis testified that he traveled from Sri Lanka to the United States, passing through Qatar and London en route. Mendis was not asked for any additional details regarding his time in London, and there is no indication from the record that Mendis ever went through British immigration and customs or left the airport.

At the end of the April 2006 hearing, the IJ (1) pretermitted Mendis's asylum application by finding that Mendis had submitted his application after the one-year statutory deadline and that he had failed to present changed or extraordinary circumstances to justify the delay in filing; (2) granted Mendis's application for withholding of removal to Sri Lanka, finding that there was a clear probability that he would be subject to persecution should he be compelled to return; (3)

3

denied Mendis's application for CAT relief, finding that the mistreatment he faced in Sri Lanka did not rise to the level of torture; (4) denied Mendis's request for voluntary departure; and (5) ordered Mendis removed to the United Kingdom, "as that is the country of the respondent's last transit to the United States."

**B. BIA Appeal**

Mendis timely appealed the IJ's order of removal to the United Kingdom to the BIA.[1] Mendis argued that the United Kingdom was not a proper country of removal because he was there for only a few hours in the airport while awaiting a connecting flight and had no legal right to travel or reside there. He further argued that the IJ should not have ordered him removed to the United Kingdom absent prior assurances that he would be accepted into the United Kingdom, or at least not summarily deported therefrom to Sri Lanka. Finally, Mendis asserted that the IJ erred in ordering him removed to the United Kingdom because the IJ had never previously designated the United Kingdom as a country for removal.

On November 28, 2007, the BIA dismissed Mendis's appeal in a one-page unpublished and non-precedential *per curiam* opinion. With respect to Mendis's argument that he should not have been ordered removed to the United Kingdom, the BIA held that "since the respondent declined to designate a country of removal, and the Immigration Judge granted him withholding of removal to Sri Lanka, the United Kingdom was properly chosen to be a count[r]y of removal pursuant to . . . 8 U.S.C. § 1231(b)(2)(E)(i) [country from which alien was admitted to the United States was an additional removal country]" (first alteration added).[2] The sole basis for that

---

[1] Mendis did not challenge any other aspect of the IJ decision.

[2] The BIA did not separately address Mendis's argument that he could not be deported to the United Kingdom absent prior assurances that the United Kingdom would not deport him to Sri Lanka.

4

conclusion was the BIA's observation that Mendis "testified that he stopped over in London, United Kingdom, en route to the Untied States." With respect to Mendis's argument that the IJ had failed to designate the United Kingdom as a country of removal, the BIA found the failure to be harmless error because "[t]he Immigration Judge's order removing the respondent to the United Kingdom in effect also designated the United Kingdom as a country of removal."

Mendis timely appealed the BIA decision, arguing that the BIA erred in dismissing his appeal because the IJ lacked statutory authority to order him removed to the United Kingdom. At oral argument and in its brief, the government argued that the IJ had authority to designate the United Kingdom as a country of removal under either § 1231(b)(2)(E)(i) (designating the "country from which the alien was admitted to the United States") or § 1231(b)(2)(E)(ii) (designating the "country in which is located the foreign port from which the alien left for the United States").

**DISCUSSION**

**A. Jurisdiction and Standard of Review**

Mendis filed a timely petition with this Court for review of the BIA's dismissal of his appeal. Accordingly, this Court has jurisdiction pursuant to 8 U.S.C. § 1252(a)(5). We consider both the BIA and IJ decisions with respect to Mendis's argument that the United Kingdom was not an appropriate country of removal. *See Zaman v. Mukasey*, 514 F.3d 233, 237 (2d Cir. 2008) ("When the BIA does not expressly adopt the IJ's decision, but its brief opinion closely tracks the IJ's reasoning, this Court may consider both the IJ's and the BIA's opinions for the sake of completeness." (internal quotation marks omitted)). We review the agency's factual findings under the substantial evidence standard, *see* 8 U.S.C. § 1252(b)(4)(B); *Pinto-Montoya v. Mukasey*, 540 F.3d 126, 129 (2d Cir. 2008), and "review *de novo* questions of law and the

5

application of law to fact," *Passi v. Mukasey*, 535 F.3d 98, 101 (2d Cir. 2008). Although the

BIA's interpretation of immigration statutes is entitled to *Chevron* deference, *INS v.*

*Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (citing *Chevron U.S.A. Inc. v. Natural Res. Def.*

*Council, Inc.*, 467 U.S. 837, 844 (1984)), the BIA's non-precedential unpublished decision in

Mendis's case is not entitled to *Chevron* deference, *see Rotimi v. Gonzales*, 473 F.3d 55, 56 (2d

Cir. 2007) (holding that a non-precedential decision by a single member of the BIA was not

entitled to *Chevron* deference because it was not intended to carry the force of law); *Phong*

*Thanh Nguyen v. Chertoff*, 501 F.3d 107, 111 (2d. Cir. 2007) (noting that *Chevron* deference is

not warranted where "the challenged BIA decision is unpublished").[3]

**B. Statutory Background**

Section 1231 of the Immigration and Nationality Act ("INA") provides four consecutive

"commands" for designating an alien's country of removal. *Jama v. Immigration and Customs*

*Enforcement,* 543 U.S. 335, 341 (2005). First, "[a]n alien shall be removed to the country of his

choice . . . , unless one of the conditions eliminating that command is satisfied." *Id.* Second,

"otherwise [the alien] shall be removed to the country of which he is a citizen . . . , unless one of

the conditions eliminating that command is satisfied." *Id.* Third, "otherwise [the alien] shall be

removed to one of the countries with which he has a lesser connection." *Id.* Countries of lesser

connection include "[t]he country from which the alien was admitted to the United States," 8

U.S.C. § 1231(b)(2)(E)(i), and "[t]he country in which is located the foreign port from which the

alien left for the United States or for a foreign territory contiguous to the United States,"

---

[3] We have not yet resolved whether IJ opinions or unpublished BIA opinions interpreting immigration statutes are entitled to *Skidmore* deference, or whether they are reviewed *de novo*. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944) (deferring to agency interpretations to the extent they have "power to persuade"). We need not resolve this question now, because neither the IJ's nor BIA's decision contains any analysis with persuasive power.

6

*id.* § 1231(b)(2)(E)(ii); *Jama*, 543 U.S. at 341.[4]  Finally, if removing the alien to one of the

countries with which he has a lesser connection is "'impracticable, inadvisable, or impossible,'

[the alien] shall be removed to 'another country whose government will accept the alien into that

country.'" *Jama*, 543 U.S. at 341 (quoting 8 U.S.C. § 1231(b)(2)(E)(vii)).

The INA provides aliens with various forms of relief from removal.  In particular, "the

Attorney General may not remove an alien to a country if the Attorney General decides that the

alien's life or freedom would be threatened in that country because of the alien's race, religion,

nationality, membership in a particular social group, or political opinion."  8 U.S.C.

§ 1231(b)(3)(A).  By regulation, the IJ must "specify and state for the record the country, or

countries in the alternative, to which [the alien's] deportation will be directed."  8 C.F.R.

§ 1240.49(c)(1).  If the alien "expresses fear of persecution or harm upon return to any of the

countries," the IJ must "[a]dvise the alien that he or she may apply for asylum in the United

States or withholding of deportation to those countries."  *Id.* § 1240.49(c)(2).

**C. Analysis**

Mendis challenges his removal to the United Kingdom on the ground that the United

Kingdom is not an authorized country of removal under § 1231(b)(2)(E)(i)–(vi).[5]  Neither

---

[4] The third command, which requires removal to a country of lesser connection under § 1231(b)(2)(E)(i)–(vi), does not require that the country of removal agree to accept the alien. *Jama*, 543 U.S. at 342–44.

[5] Mendis also argues that he cannot be removed to the United Kingdom pursuant to § 1231(b)(2)(E)(i)–(vi) absent assurances from the British government that it will accept Mendis and not deport him to Sri Lanka.  Because the Supreme Court clearly held in *Jama* that "clauses (i) through (vi) contain no acceptance requirement," 543 U.S. at 345 n.5, we understand Mendis's argument to be that assurances are nevertheless required in *his* case because he has no right to stay in the United Kingdom and the laws of that country would cause him to be returned to Sri Lanka, which the United States cannot do directly.  Mendis points to no statutory language supporting an exception to *Jama*'s holding under these circumstances, and "[w]e do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends

7

Mendis nor the government has cited any cases or BIA precedential opinions supporting their interpretations of § 1231(b)(2)(E)(i)–(vi). We conclude that there is an inadequate basis for appellate review of the agency's decision because it is not clear why the agency determined that the United Kingdom was an appropriate country of removal under § 1231(b)(2)(E).

As an initial matter, it is unclear which statutory provision the agency relied upon in concluding that Mendis can be removed to the United Kingdom, a country to which he alleges no connection other than having stopped over in a U.K. airport en route to the United States. The IJ's decision contains no discussion of the applicable law, and summarily orders Mendis removed to the United Kingdom "as that is the country of the respondent's last transit to the United States." Perhaps because the "country of last transit" is not one of the categories listed in § 1231(b)(2)(E), in its written decision the BIA cited § 1231(b)(2)(E)(i), which states that an alien may be removed to the "country from which the alien was admitted to the United States."

---

to apply." *Id*. at 341. Although Mendis relies on *Amanullah v. Cobb*, 862 F.2d 362 (1st Cir. 1988), to support his argument, at most, *Amanullah* suggests that to the extent the United Kingdom is likely to deport Mendis to Sri Lanka, Mendis should be afforded an opportunity to demonstrate that he is eligible for withholding of removal to the United Kingdom. *Id.* at 367.

We note that *Amanullah*'s discussion of withholding of removal is connected to Mendis's argument, which he pressed before the BIA but not to us, that the IJ erred in failing to designate the United Kingdom as a country of removal prior to ordering Mendis's removal, in violation of 8 C.F.R. § 1240.49(c)(1). The BIA held that the IJ's failure to follow the regulation was harmless, but failed to explain why, and the BIA's conclusion is far from obvious. If Mendis had had notice that the United Kingdom was a potential country of removal, he would have known to raise concerns to the IJ that were relevant to the determination of whether removal to the United Kingdom was "inadvisable" under § 1231(b)(2)(E). *See Jama*, 543 U.S. at 342 ("Nonacceptance may surely be one of the factors considered in determining whether removal to a given country is impracticable or inadvisable . . . ."). Mendis also would have been given notice that he could seek other forms of relief from removal to the United Kingdom, including withholding of removal. *See* 8 C.F.R. § 1240.49(c)(2) (stating that if an alien "expresses fear of persecution or harm upon return to any of the countries [designated for removal]," the IJ must "[a]dvise the alien that he or she may apply for asylum in the United States or <u>withholding of deportation to those countries</u>" (emphasis added)). We expect that the BIA will address Mendis's argument on remand, either more fully explaining why the IJ's error was harmless or remedying the error.

8

Before this Court, however, counsel for the agency suggested that § 1231(b)(2)(E)(ii) was an alternative statutory basis for ordering Mendis removed to the United Kingdom. Section 1231(b)(2)(E)(ii) provides for removal to the "country in which is located the foreign port from which the alien left for the United States."

We conclude that § 1231(b)(2)(E)(i) and § 1231(b)(2)(E)(ii) are ambiguous, and that neither clearly authorizes Mendis's removal to the United Kingdom. Because the agency has never issued a precedential opinion interpreting § 1231(b)(2)(E)(i) or § 1231(b)(2)(E)(ii) in an analogous circumstance, we also lack guidance on the BIA's official interpretation of these provisions. *See Rotimi*, 473 F.3d at 58 (holding that non-precedential BIA decisions were "not intended to carry[] the force of law" (internal quotation marks omitted)).

We believe that there are at least four possible constructions of the phrase "country from which the alien was admitted to the United States" as used in § 1231(b)(2)(E)(i): (1) the last country in which the alien was physically present prior to his or her admission to the United States; (2) the last country which the alien actually entered (either legally or illegally) for immigration purposes prior to his or her admission to the United States; (3) the last country in which the alien spent more than a brief and transitory sojourn prior to admission to the United States; and (4) the country from which the alien initially departed for admission to the United States.[6] The IJ and BIA adopted the first interpretation in this case. Other provisions of

---

[6] Mendis would be removable to the United Kingdom under the first interpretation, perhaps removable to Qatar under the third, and removable to Sri Lanka under the fourth (were it not for the withholding of removal to Sri Lanka). With respect to the second and third interpretations, the record is bereft of any evidence as to whether Mendis entered the United Kingdom for immigration purposes, how, and for how long. Petitioner proffered during oral argument that he was in the United Kingdom for only a few hours, and that he had some form of U.K. transit visa. The record is silent as to the visa's legal significance with respect to Mendis's right to enter and travel within the United Kingdom.

§ 1231(b) render that construction problematic, however, and it is unclear whether these options (or others) are affected by the failure of Mendis to designate a removal country.

Section 1231(b)(1) states that an alien who is found inadmissible upon arrival in the United States "shall be removed to the country in which the alien boarded the vessel or aircraft on which the alien arrived in the United States." § 1231(b)(1)(A). Had Congress intended § 1231(b)(2)(E)(i) to describe the last country in which an alien was physically present prior to admission to the United States, it could have used similar language. The fact that Congress used unambiguous language in § 1231(b)(1), which is in the same section of the statute at issue here, indicates that "it knows how to make such a requirement manifest," *Jama*, 543 U.S. at 341, and cautions against interpreting the ambiguous language in § 1231(b)(2)(E)(i) to have essentially the same meaning. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (stating that "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended" (internal quotation marks omitted)).

With respect to § 1231(b)(2)(E)(ii), the phrase "the country in which is located the foreign port from which the alien left for the United States" could mean the country from which an alien began his or her journey to the United States—in Mendis's case, Sri Lanka, *cf. Triant v. Nicolls*, 50 F. Supp. 915, 916–17 (D. Mass. 1943) (interpreting "the foreign port at which such aliens embarked for the United States" to be the point of "original enrollment, and the one by which the petitioner himself signed on for the voyage")—and/or the country with the port that the alien most recently left before arriving in the United States. The interpretation of § 1231(b)(2)(E)(ii) is also relevant to the interpretation of § 1231(b)(2)(E)(i), so as to ensure that each provision is given a different meaning. It is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause,

10

sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted).

Under these circumstances, where the agency "has not yet spoken with sufficient clarity" about its interpretation of an ambiguous provision of the INA as it applies to the petition currently before us, we conclude that the "proper course is . . . to remand the matter to the agency." *Ucelo-Gomez v. Gonzales*, 464 F.3d 163, 169–70 (2d Cir. 2006) (holding that remand is generally appropriate when "the agency has yet to decide whether a group, a thing, or a situation falls within the ambit of a statutory term," even if the IJ ruled on the precise issue and the BIA summarily affirmed without a written opinion). Accordingly, we remand to the BIA so that it may issue a precedential opinion that identifies the statutory basis for Mendis's removal to the United Kingdom and gives reasons for its statutory interpretation. Our order is not intended to preclude the BIA from reconsidering its decision to order Mendis removed to the United Kingdom.

## CONCLUSION

For the foregoing reasons, we grant Mendis's petition for review, vacate the order of the BIA, and remand for further proceedings consistent with this opinion. Mendis's pending motion for a stay of removal pending the final disposition of his petition is dismissed as moot.

11