07-5369-ag
Guo Wang v. Eric Holder

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2009

(Argued: September 23, 2009                    Decided: October 2, 2009)

Docket No. 07-5369-ag

————————————————————————————————

GUO QI WANG,

*Petitioner*,

—v.—

ERIC H. HOLDER, JR., Attorney General of the United States,*

*Respondent.*

————————————————————————————————

Before : WALKER, KATZMANN, and ROTH,** *Circuit Judges*.

————————

Petition for review of an order of the Board of Immigration Appeals ("BIA") affirming a decision of an immigration judge which denied petitioner Guo Qi Wang's application for asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), and withholding of removal under the Convention Against Torture ("CAT"). We deny the petition, finding that the BIA correctly concluded that Wang's participation in a scheme to sell organs for profit on the black market was a serious nonpolitical crime.

————————

_____

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr. is automatically substituted for former Attorney General Michael B. Mukasey as respondent in this case.

\** The Honorable Jane R. Roth, of the United States Court of Appeals for the Third Circuit, sitting by designation.

Counsel for Petitioner:       JOHN F. CLARK, Holland & Hart LLP, Washington, DC

Counsel for Respondent:       JAMES E. GRIMES, Senior Litigation Counsel (Gregory G.
                              Katsas, Assistant Attorney General, Linda S. Wernery,
                              Assistant Director, *on the brief*), Office of Immigration
                              Litigation, U.S. Department of Justice, Washington, DC
                              _____

PER CURIAM:

This case calls upon us in principal part to determine whether the Board of Immigration Appeals ("BIA") correctly concluded that participation in a scheme to sell organs for profit on the black market is a serious nonpolitical crime.

Petitioner Guo Qi Wang petitions for review of an order of the BIA affirming a decision of an immigration judge which denied his application for asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), and withholding of removal under the Convention Against Torture ("CAT"). We agree with the BIA that Wang's participation in a scheme to sell organs for profit on the black market was a serious nonpolitical crime. Accordingly, we deny the petition.

## FACTUAL BACKGROUND

In May 2000, Guo Qi Wang, a native and citizen of the People's Republic of China, attempted to enter the United States without valid travel documents. In April 2001, Wang filed an affirmative application for asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), withholding of removal under the CAT, and deferral of removal under the CAT. In his application, Wang claimed a fear of persecution and torture for violating his agreement with the Chinese government not to expose the government's program of harvesting organs and tissue from executed prisoners for profit. Wang stated that, as part of the government's program, he

2

extracted organs and tissue from executed prisoners at least one hundred times.

In July 2002, Wang was charged as removable by service of a Notice to Appear. In February 2003, Wang filed a supplemental asylum application, presenting essentially the same facts and claims as his first application, namely a fear of persecution and torture for exposing the Chinese government's program of extracting organs from executed prisoners for profit. At an April 2004 merits hearing, Wang testified in support of his application for relief from removal. Specifically, Wang testified that he had become personally involved, at the military hospital where he worked, in a scheme involving the harvesting of organs from executed prisoners. Wang stated that, in order to procure the cadavers from which to harvest organs, the hospital would pay court officials for each body, and that he himself sometimes made these payments on behalf of the hospital. According to his testimony, Wang personally removed the skin from cadavers "about 100 times." The harvesting would occur either at the execution location or at a crematorium, and Wang was present at some of the executions, although he was instructed not to disclose the details of the organ harvesting scheme to the public. Wang testified that after the organs were harvested, the hospital "sold them to patients[,] . . . [f]irst . . . [to] the patients who had money, and second [to] the patients who have prestige to get those organs." According to Wang, the organ harvesting scheme was very lucrative for the hospital. Wang participated in the harvesting of organs from 1988 to 1995, when he began refusing to participate. When Wang voiced an objection to the scheme as "an uncivilized and immoral way of doing things," the hospital required Wang to sign an agreement that he would not reveal the organ harvesting scheme "to the media, the foreign countries, or to outside parties." Besides harvesting the skin from executed prisoners, Wang also carried the corpse of an executed prisoner on a stretcher and

3

administered anti-clotting medication to a living prisoner in order to extend the viability of his

kidneys after his execution, although he told the prisoner that the medication was a tranquilizer

that would prevent unnecessary suffering. According to Wang, he learned from his superior that

some executions were intentionally botched, that is, the executioner would intentionally misfire

so that the prisoner did not die, to extend the life of the kidneys before transplantation. Wang

also testified that he had once removed the skin of a prisoner who was still alive after a botched

execution. Wang claimed that the Chinese government would persecute and torture him,

asserting that the government had responded to testimony he gave before Congress about the

organ-harvesting scheme by identifying him as a traitor in the news and by seeking information

about his whereabouts from his wife.[1]

In August 2005, the IJ issued a decision denying Wang's application for asylum,

---

[1] Both before the BIA and before this Court, Wang has maintained that certain portions of his testimony, particularly the testimony about his knowledge of intentionally botched executions and the incident involving removing the skin from a living prisoner, were mistranslated. The above account of his testimony before the IJ, however, is drawn exclusively from testimony the accuracy of which Wang does not dispute, including the independent translation of his testimony that Wang submitted to the BIA and this Court. For instance, in the translation that Wang submitted, which he maintains is accurate, he admitted that in one incident, "[a]fter we removed kidney and skin, the prisoner still had breath, and still had very weak pulse." In another translation Wang submitted, he admitted that "sometimes the gunman who will fire the shot will receive indication to misfire intentionally so that the prisoner will not die," in order to "extend the life of the kidneys," and that he knew about this practice because his "superior told [him]." Wang's due process claim based on alleged mistranslations thus fails, because he has failed to identify any translation errors that significantly alter the meaning of his testimony as translated by the Immigration Court translator, and he therefore has not demonstrated that the proceedings were so fundamentally unfair as to violate his due process rights. *See Augustin v. Sava*, 735 F.2d 32, 38 (2d Cir. 1984). For the same reasons, Wang's claim of ineffective assistance of his former counsel is without merit. *See Rabiu v. INS*, 41 F.3d 879, 882 (2d Cir. 1994) (holding that in order to demonstrate ineffective assistance of counsel, an alien must show, *inter alia*, "that competent counsel would have acted otherwise," and "that [the alien] was prejudiced by his counsel's performance" (internal quotation marks omitted)).

4

withholding of removal under 8 U.S.C. § 1231(b)(3), and withholding of removal under the CAT, but granting Wang deferral of removal under the CAT. In her decision, the IJ concluded, inter alia, that Wang was ineligible for asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), and withholding of removal under the CAT for having willfully committed a serious nonpolitical crime, namely torture. However, the IJ granted Wang deferral of removal under the CAT, concluding that if Wang were removed to China, government officials would likely torture him for revealing state secrets and publicly humiliating the Chinese government.

Wang appealed the IJ's decision to the BIA, arguing, among other things, that the IJ erred in finding that he had committed a serious nonpolitical crime. The government also appealed the IJ's decision to the BIA, arguing that the IJ erred in concluding that Wang established eligibility for deferral of removal under the CAT.

In November 2007, the BIA dismissed the appeals, adopting and affirming the IJ's decision. As relevant here, the BIA agreed with the IJ's determination that Wang was not eligible for asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), or withholding of removal under the CAT because there were "serious reasons to believe that the respondent engaged in a serious nonpolitical offense before coming to the United States." The BIA concurred with the IJ's finding that the organ extraction program would be considered criminal in the United States and under international law. The BIA further concluded that, even if Wang were otherwise eligible for asylum, it would deny him such relief as a matter of discretion because his actions in the organ extraction program were "sufficiently repugnant and atrocious, . . . involv[ing] extraction of tissue from persons who may not have been dead at the time of the extraction, . . . injecting condemned prisoners with heparin so as to preserve their organs after

5

execution, while leaving the victims with an impression that the injections were performed to ease agony and pain associated with execution." Finally, the BIA held that, even assuming the truth of Wang's assertion that he was not involved in the extraction of organs or tissue from a live prisoner, *i.e.*, torture, the serious nonpolitical crime bar would still be applicable in his case due to his involvement in the government's scheme to remove organs for profit. Wang filed a timely petition for review with this Court.

DISCUSSION

Under the Immigration and Nationality Act ("INA") and its implementing regulations, the agency must deny an application for asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), and withholding of removal under the CAT, if "there are serious reasons for believing that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States." 8 U.S.C. § 1158(b)(2)(A)(iii); *see also* 8 U.S.C. § 1231(b)(3)(B)(iii); 8 C.F.R. §1208.16(d)(2). The "[s]erious reasons to believe" standard is the equivalent of probable cause. *See Khouzam v. Ashcroft*, 361 F.3d 161, 165-66 (2d Cir. 2004). Determining whether something is a "serious nonpolitical crime" involves, under the BIA's interpretation of the statute, considering whether "'the political aspect of the offense outweigh its common-law character. This would not be the case if the crime is grossly out of proportion to the political objective or if it involves acts of an atrocious nature.'" *INS v. Aguirre-Aguirre*, 526 U.S. 415, 429 (1999) (quoting *Matter of McMullen*, 19 I. & N. Dec. 90, 97-98 (BIA 1984)). Robbery and embezzlement are examples of serious nonpolitical crimes. *Matter of Ballester-Garcia*, 17 I. & N. Dec. 592, 595-96 (BIA 1980) (robbery); *Kenyeres v. Ashcroft*, 538 U.S. 1301,

6

1302 (Kennedy, Circuit Justice 2003) (citing *In re Castellon*, 17 I. & N. Dec. 616 (BIA 1981)) (embezzlement).

When the BIA adopts the decision of the IJ and supplements the IJ's decision, we review the decision of the IJ as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review *de novo* constitutional challenges and questions of law. *Bah v. Mukasey*, 529 F.3d 99, 110 (2d Cir. 2008).[1]

We agree with the BIA's determination that participation in a "scheme to deceive prisoners and their families, and to sell organs on a black market" is a serious nonpolitical crime. The United States recognizes as criminal the act of harvesting and transferring organs for profit.[2]

---

[1] Although the government correctly asserts that we accord deference to the BIA's construction of the INA under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984), an IJ's decision and a non-precedential BIA decision, such as the decisions in this case, are not accorded *Chevron* deference. *Ucelo-Gomez v. Gonzales*, 464 F.3d 163, 169-70 (2d Cir. 2006). While we have not yet decided whether unpublished, single-member BIA decisions are entitled to the lesser form of deference described in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), *see Mendis v. Filip*, 554 F.3d 335, 338 n.3 (2d Cir. 2009), we need not consider the issue here as we would reach the same result reviewing this petition *de novo*, *see Ashton v. Gonzales*, 431 F.3d 95, 97 (2d Cir. 2005).

[2] Although not dispositive, our determination that the sale of organs on the black market is a serious nonpolitical crime finds further support in the general condemnation of this type of behavior by the world community, including by China itself. *See, e.g.*, U.S. Dep't of State, China, Country Reports on Human Rights Practices 2003 (stating that a Ministry of Health directive in China provides that buying and selling human organs and tissues is prohibited), *available at* http://www.state.gov/g/drl/rls/hrrpt/2003/27768.htm; Europol Convention, Annex Referred to in Art. 2 (describing the "illicit trade in human organs and tissue" as a serious form of international crime "which Europol could deal with" under the Europol convention), *available at* http://www.europol.europa.eu/index.asp?page=legalconv#TITLE%20I; World Health Org., Guiding Principles on Human Organ Transplantation, Guiding Principle 5 ("The human body and its parts cannot be the subject of commercial transactions. Accordingly, giving or receiving payment (including any other compensation or reward) for organs should be prohibited."), *available at* http://www.who.int/ethics/topics/transplantation_guiding_principles/en/index1.html; *id.* Guiding Principle 2 ("Physicians determining that the death of a potential donor has occurred should not be directly involved in organ removal from the donor and subsequent transplantation

*See* 42 U.S.C. § 274e(a) & (b) (providing that "[i]t shall be unlawful for any person to knowingly acquire, receive, or otherwise transfer any human organ for valuable consideration for use in human transplantation if the transfer affects interstate commerce" and that any person engaging in such practice "shall be fined not more than $50,000 or imprisoned not more than five years, or both"). This alone leads us to conclude that the scheme at issue here was a serious crime.[3] Further, there is no indication in this record that the scheme at issue here had any "political aspect" or "political objective." *See Aguirre-Aguirre*, 526 U.S. at 429 (internal quotation marks omitted). Accordingly, the BIA correctly determined that participation in such a scheme is a serious nonpolitical crime.

Moreover, the BIA correctly determined that there were serious reasons to believe that Wang was involved in this crime, given that Wang himself admits that he was knowingly involved in the Chinese government's scheme to profit from the harvesting and transplantation of organs removed from executed prisoners without their consent.

As the agency correctly found that the serious nonpolitical crime bar rendered Wang ineligible for asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), and withholding of

procedures . . . .").

[3] That the treatment of conduct as a crime in the United States is an important consideration in determining whether the conduct constitutes a "serious . . . crime" for purposes of the INA is in accord with the BIA's decision in *Matter of Ballester-Garcia*, 17 I. & N. Dec. 592, 595 (BIA 1980) (stating that "such factors as the alien's description of the crime, the turpitudinous nature of the crime according to our precedents, the value of any property involved, the length of sentence imposed and served, and *the usual punishments imposed for comparable offenses in the United States*, are all proper considerations in attempting to decide whether or not a crime may have been serious" (emphasis added)). Because we are reviewing the BIA's nonprecedential decision in Wang's case *de novo*, and because neither party addresses the issue, we express no opinion as to how the BIA's articulation of these factors in *Ballester-Garcia* should be treated by our Court in other cases.

removal under the CAT because of his involvement in the Chinese government's scheme to harvest and sell organs on the black market, we need not consider Wang's challenges to the BIA's alternative conclusions that Wang committed another serious nonpolitical crime, namely torture, that the persecutor bar rendered him ineligible for such relief, or that the BIA would deny Wang asylum as a matter of discretion. Finally, we note that the government did not appeal the BIA's decision to affirm the IJ's grant of Wang's application for deferral of removal under the CAT, and therefore Wang remains the beneficiary of this relief.

CONCLUSION

For the foregoing reasons, we **DENY** the petition for review.