09-2046-ag
Dobrova v. Holder

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2009

(Argued: January 22, 2010                    Decided: June 9, 2010)

Docket No. 09-2046-ag

_____

FATON DOBROVA,
*Petitioner*,

-v.-

ERIC H. HOLDER, JR., United States Attorney General,
*Respondent*.

_____

Before:        WALKER, STRAUB, and LIVINGSTON, *Circuit Judges*.

Alien seeks review of Board of Immigration Appeals decision finding him statutorily ineligible for a discretionary waiver of inadmissibility pursuant to Section 212(h) of the Immigration and Nationality Act, 8 U.S.C. § 1182(h), on the ground that as an alien who has previously been admitted to the United States for lawful permanent residence, he has since the date of such admission been convicted of an aggravated felony and is also unable to establish seven years of continuous lawful residency in the United States immediately preceding the initiation of proceedings to remove him.

Petition denied.

MATTHEW L. GUADAGNO (JULES E. COVEN & KERRY W. BRETZ, *on the brief*), Bretz & Coven LLP, New York, N.Y., *for Petitioner*.

REMI ADALEMO, Attorney, Office of Immigration Litigation (TONY WEST, Assistant Attorney General & LUIS E. PEREZ, Senior Litigation Counsel, Office of Immigration Litigation, *on the brief*), U.S. Department of Justice, Civil Division, Washington, D.C., *for Respondent*.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

This petition calls upon us to interpret the word "previously" as it is used in Section 212(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(h), related to waivers of inadmissibility. Petitioner Faton Dobrova seeks review of an April 16, 2009 decision of the Board of Immigration Appeals ("BIA"), *In re Dobrova*, No. A 036 269 650 (B.I.A. Apr. 16, 2009), dismissing his appeal from a November 27, 2007 decision and order of Immigration Judge ("IJ") Annette S. Elstein, No. A 036 269 650 (Immig. Ct. N.Y. City Nov. 27, 2007), finding him ineligible for a waiver of inadmissibility pursuant to Section 212(h), denying his application for adjustment of status, and ordering him removed. The BIA determined that in May 1983 Dobrova had "previously been admitted to the United States as an alien lawfully admitted for permanent residence" and

that Section 212(h) therefore rendered him ineligible for a waiver of inadmissibility on two separate grounds: (1) that since the date of this admission, he had been convicted of an aggravated felony; and (2) that he had not lawfully resided continuously in the United States for a period of at least seven years immediately preceding the initiation of proceedings to remove him. Dobrova argues that Section 212(h) is inapplicable here on the theory that, although he was lawfully admitted for permanent residence in 1983, his most recent 2001 entry to the United States was deemed by the IJ to have been unlawful so that he is not an alien who has *previously*—meaning most recently—been admitted for lawful permanent residence for the purpose of Section 212(h). Because we find the relevant provision to be unambiguous and Dobrova's interpretation of "previously," as used in Section 212(h), to be in error, we deny Dobrova's petition for review.

## BACKGROUND

Dobrova, a native of the former Yugoslavia and a citizen of Macedonia, entered the United States at Anchorage, Alaska on May 31, 1983, as a lawful permanent resident ("LPR"). On March 16, 1988, he was convicted of sexual abuse of a minor in the second degree in violation of Alaska Statute § 11.41.436(a)(1), an offense he committed on June 26, 1987. He was sentenced to four years' imprisonment, with two years suspended, and to three years'

3

probation.

On September 15, 1988, the former Immigration and Naturalization Service ("INS")[1] filed an Order to Show Cause charging that Dobrova was subject to deportation under former INA § 241(a)(4) as an alien who had been convicted of a crime involving moral turpitude—the Alaska sexual abuse of a minor conviction—committed within five years of entry and for which he received a sentence of confinement for a year or more. On June 29, 1989, an IJ issued a decision ordering Dobrova deported to Yugoslavia. Dobrova unsuccessfully appealed to the BIA, but did not seek this Court's review of the BIA's decision. He was deported on November 16, 1989.

Sometime in 2000—over ten years later—Dobrova's United States citizen wife applied for and received a reentry permit for Dobrova. On February 19, 2001, Dobrova entered the United States ostensibly as an LPR after he presented the reentry permit and his defunct permanent resident card. Some five years later, on or about March 30, 2006, Dobrova was apprehended and detained at a federal detention facility.[2] That same day, DHS commenced removal proceedings against Dobrova by issuing a Notice to Appear ("NTA").

---

[1] The INS's immigration enforcement functions are now handled by the Department of Homeland Security ("DHS"). *See Ali v. Mukasey*, 529 F.3d 478, 482 n.4 (2d Cir. 2008).

[2] Dobrova was subsequently released on bond.

The NTA alleged, *inter alia*, that Dobrova was admitted to the United States on February 19, 2001 "as a lawful permanent resident," a status Dobrova was "not entitled to."

On April 14, 2006, Dobrova's United States citizen son filed an I-130 visa petition to classify Dobrova as an immediate relative under 8 U.S.C. § 1151(b), INA § 201(b), which exempts certain categories of aliens—such as children, spouses, and parents of a United States citizen—from numerical visa limitations. 8 U.S.C. § 1151(b). In conjunction with his son's visa petition, Dobrova filed an application in December 2006 to adjust status pursuant to 8 U.S.C. § 1255, INA § 245, which allows certain aliens physically present in the United States to apply for adjustment of status to that of an alien lawfully admitted for permanent residence. 8 U.S.C. § 1255(i). Because of his prior criminal conviction for a crime involving moral turpitude, which rendered him statutorily inadmissible pursuant to INA § 212(a)(2), 8 U.S.C. § 1182(a)(2), Dobrova also filed an application for a waiver of inadmissibility under Section 212(h).

At his January 9, 2007 removal hearing, Dobrova conceded his removability and requested relief in the form of adjustment of status in conjunction with a waiver of inadmissibility. Citing Section 212(h), DHS moved to pretermit Dobrova's requested relief, arguing that Dobrova was statutorily

5

ineligible since he had been previously admitted as an LPR and then convicted of an aggravated felony—the Alaska conviction—and because he was unable to establish that he had resided continuously in the United States for the requisite seven years immediately preceding the date of proceedings to remove him. The IJ adjourned the hearing to allow the parties to brief this issue.

Dobrova did not contest before the IJ that he was not entitled to be admitted as a lawful permanent resident when he reentered the United States in 2001. He argued that this most recent entry was nevertheless the controlling event for determining Section 212(h)'s applicability and that precisely because this most recent entry was not a lawful admission for permanent residence, Section 212(h) did not apply to him. Dobrova contended that "previously," as used in Section 212(h), denotes "most recently" and that because he had not been "most recently" admitted to the United States as an alien lawfully admitted for permanent residence, Section 212(h) was inapplicable. The IJ rejected this argument, determining on November 27, 2007 in a written decision that Dobrova was ineligible for a waiver of inadmissibility pursuant to Section 212(h). Relying on Dobrova's first admission to the United States in 1983 as an LPR, the IJ concluded that Dobrova's prior conviction and failure to satisfy the lawful continuous residency requirement disqualified him from Section 212(h)

6

eligibility.[3] Dobrova appealed to the BIA, which, on April 16, 2009, held that since Dobrova was "previously . . . admitted to the United States" as a permanent resident in 1983 and had subsequently been convicted of an aggravated felony and had failed to establish seven years of continuous lawful residence before the initiation of removal proceedings, Dobrova was ineligible for a Section 212(h) waiver.

Dobrova timely appealed the BIA's decision to this Court.

## DISCUSSION

"Where, as here, the BIA adopts the IJ's reasoning and offers additional commentary, we review the decision of the IJ as supplemented by the BIA." *Wala v. Mukasey*, 511 F.3d 102, 105 (2d Cir. 2007). While the BIA's interpretation of immigration statutes is generally entitled to *Chevron* deference, interpretations in non-precedential unpublished BIA decisions, as in the instant case, are not so entitled. *Mendis v. Filip*, 554 F.3d 335, 338 (2d Cir. 2009); *Garcia-Padron v. Holder*, 558 F.3d 196, 199 (2d Cir. 2009). Whether unpublished BIA opinions are entitled to *Skidmore* deference or whether they are reviewed *de novo* is an open question in this Circuit. *Mendis*, 554 F.3d at

---

[3] The IJ also noted that even counting Dobrova's second entry to the United States as the controlling date for the purpose of determining Section 212(h)'s applicability, Dobrova would still be ineligible for a waiver of inadmissibility because Dobrova could not establish seven years of continuous lawful residence before the initiation of removal proceedings in 2006.

338 n.3. We need not answer that question here, however, because even on *de novo* review, we find the meaning of "previously" in Section 212(h) to be clear and unambiguous. Although this Court has, in some circumstances, remanded to the BIA so that the BIA could by published opinion interpret a statute it is charged with enforcing, *see, e.g.*, *Jian Hui Shao v. BIA*, 465 F.3d 497, 502-03 (2d Cir. 2006), since here we determine that the text of the relevant statute is clear, and the only question presented on appeal is a purely legal one, remand to the BIA for precedential interpretation in the first instance is unnecessary, *see Phong Thanh Nguyen v. Chertoff*, 501 F.3d 107, 111 (2d Cir. 2007).

Pursuant to Section 212(h), the Attorney General may, in his discretion, waive certain grounds of inadmissibility, including inadmissibility for commission of a crime of moral turpitude. 8 U.S.C. § 1182(h); *Jankowski-Burczyk v. INS*, 291 F.3d 172, 175 & n.1 (2d Cir. 2002). Section 212(h) provides, however, that

> [n]o waiver shall be granted under this subsection in the case of an alien who *has previously been admitted to the United States as an alien lawfully admitted for permanent residence* if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States.

8 U.S.C. § 1182(h) (emphasis added).

Disputed in the instant case is the interpretation of "previously" in the phrase "has previously been admitted to the United States as an alien lawfully admitted for permanent residence." The government argues—and the IJ and BIA determined—that an alien who "has previously been admitted" to the United States as an LPR denotes an alien who has been so admitted at any time in the indefinite past. Dobrova instead argues that the use of the term "previously" in the statute is ambiguous because it could mean either, as the government urges, "at any time prior" or alternatively could mean "the most recent, or last" time. Pet. Br. at 15-16. Under the latter interpretation, Dobrova contends that since his most recent entry was not as an LPR (since when he was admitted in 2001 he was *erroneously* admitted as an LPR), he is therefore not an "alien who has previously been admitted for lawful permanent residence." *Id.* at 16. That is, Dobrova urges a reading of Section 212(h) that looks only to the alien's most recent entry to determine whether he is statutorily precluded from obtaining a waiver of inadmissibility.

"'[S]tatutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there.'" *Bustamante v. Napolitano*, 582 F.3d 403, 406 (2d Cir. 2009) (alteration in original) (quoting *Puello v. BCIS*, 511 F.3d 324, 327 (2d Cir. 2007)). This is because, in ascertaining Congress's intent, if the statutory text is unambiguous, no further

9

inquiry is necessary. *Clark v. Astrue*, 602 F.3d 140, 147 (2d Cir. 2010) (quoting *Snell Island SNF LLC v. NLRB*, 568 F.3d 410, 415 (2d Cir. 2009)). In conducting such an analysis, we "review the statutory text, considering the ordinary or natural meaning of the words chosen by Congress, as well as the placement and purpose of those words in the statutory scheme." *United States v. Aguilar*, 585 F.3d 652, 657 (2d Cir. 2009) (internal quotation marks omitted). We note, moreover, that "'Congress' use of a verb tense is significant in construing statutes.'" *Barscz v. Dir., Office of Workers' Comp. Programs*, 486 F.3d 744, 750 (2d Cir. 2007) (quoting *United States v. Wilson*, 503 U.S. 329, 333 (1992)).

Here, the ordinary, common meaning of "previously" is "beforehand, hitherto, antecedently." Webster's Third New Int'l Dictionary 1798 (2002); *see also* Oxford English Dictionary, Vol. XII 448 (2d ed. 1991) (defining "previously" to mean "[a]t a previous or preceding time; before, beforehand, antecedently"). Contrary to Dobrova's suggestion, "previously," an adverb, does not commonly refer to the most recent occurrence of action, but to action that has taken place *sometime* in the indefinite past. A novel "previously available only in hardcover" may thus have been published many times in hardcover before appearing in paperback, but it would be misleading to use this phrase to refer to a book that was published in paperback and then most recently in hardcover only last year.

10

Likewise, an aging singer whose handbills proclaim "previously at La Scala" may hope that her audience takes this to refer to some time in the relevant past, but she has not affirmatively stated that her most recent past performance was in Milan.

Congress's use of the present perfect tense—"has . . . been admitted"—is significant here. The present perfect tense "refers to (1) a time in the indefinite past . . . , or (2) a past action that comes up to and touches the present." Chicago Manual of Style ¶ 5.119 (15th ed. 2003). Use of this tense evinces Congress's intent to include *any* previous admission for lawful permanent residence within the ambit of Section 212(h), including admission in the indefinite past. Dobrova argues that this interpretation of the statute renders meaningless the word "previously," thus violating the canon of statutory construction holding that we "disfavor interpretations of statutes that render language superfluous." *Mendez v. Holder*, 566 F.3d 316, 321-22 (2d Cir. 2009) (internal quotation marks omitted). We disagree. As explained, the present perfect tense can refer either to a time in the indefinite past *or* a past action that has continuing relevance—that "comes up to and touches the present." Use of "previously" in Section 212(h) therefore clarifies that the statute does not apply only to aliens who were and still are admitted as LPRs, but also to those who were at some earlier time admitted as LPRs but, as in the instant case, have had

11

their LPR status terminated and are inadmissible but seeking a waiver.

We are further persuaded of our construction of "previously" as used in Section 212(h) by examining the meaning of the phrase "lawfully admitted for permanent residence," as in Section 212(h)'s reference to an alien "who has previously been admitted to the United States as an alien lawfully admitted for permanent residence." "[A]dmission" and "admitted" for purposes of the INA refer to "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "Lawfully admitted for permanent residence" means "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." *Id.* at § 1101(a)(20). "Such status terminates upon entry of a final administrative order of exclusion, deportation, or removal." 8 C.F.R. § 1.1(p).

Dobrova was therefore admitted in 1983 as an LPR, but his status as such terminated upon his 1989 order of deportation. Section 212(h) does not suggest that an alien whose LPR status was terminated by deportation in accordance with 8 C.F.R. § 1.1(p) is no longer an alien "who has previously been admitted" as an LPR under 8 U.S.C. § 1101(a)(13)(A). Although Dobrova, after his deportation, was no longer an LPR, his deportation and change of status did not alter that he was *previously* lawfully admitted as such. If this were not the case

12

then a person in Dobrova's situation, having had his status as an LPR revoked and having been deported because of his conviction of a crime of moral turpitude, could potentially become eligible for a waiver of inadmissibility, despite the fact that his crime constituted an aggravated felony for the purpose of Section 212(h), simply by virtue of being readmitted into the United States, even unlawfully.

The point can be generalized. Under Dobrova's suggested interpretation of Section 212(h), *any* alien who was admitted as an LPR but who subsequently committed an aggravated felony, was ordered removed from the country, and then entered again illegally, would not be statutorily precluded from seeking a waiver of inadmissibility on the basis of this conviction. Yet if that same alien had remained outside the country he would be ineligible for such relief. We do not think that Congress intended an interpretation that rewards an alien for reentering the country illegally after being removed.

We therefore conclude that Dobrova is an alien who "has previously been admitted to the United States as an alien lawfully admitted for permanent residence" since, in 1983, he was admitted as an LPR. We further agree with the BIA that he is ineligible for relief under Section 212(h) both because he has since been convicted of an aggravated felony and because he has not established the requisite seven years of lawful continuous residency immediately preceding the date of initiation of the proceedings to remove him.

13

We have considered the remainder of Dobrova's arguments and consider them to be without merit.

## CONCLUSION

For the foregoing reasons, we deny Dobrova's petition for review.